DEJA VU–LYNNWOOD, INC., fka
Pam Jam Enterprises, Inc.
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 99–35832.

D.C. No. CV–96–01721–JCC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 2001.

Decided Oct. 26, 2001.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2). Accordingly, appellant's request for oral argument is denied.

Before WALLACE, HALL, and T.G. NELSON, Circuit Judges.

## MEMORANDUM [1]

Deja Vu appeals the decision of the district court denying its motion for litigation costs. Deja Vu owns nightclubs in the Seattle area that feature exotic dancers. Deja Vu treats its dancers as "tenants" rather than employees, and thereby avoids paying employment taxes. The IRS audited Deja Vu, determined that the dancers were employees of Deja Vu, and assessed back taxes. Deja Vu filed a complaint in district court challenging the assessments. After this court issued its opinion in *Marlar, Inc. v. United States*, 151 F.3d 962 (9th Cir.1998), which held that a club treating its female dancers as tenants was not subject to employment taxes, the government conceded its case against Deja Vu before trial. Deja Vu moved for litigation costs under 26 U.S.C. § 7430. The district court denied the motion for costs and Deja Vu appealed to this court.

### I.

We review a district court's decision to deny a prevailing party an award of attorney fees under 26 U.S.C. § 7430 for an abuse of discretion. *See United States v. Ayres*, 166 F.3d 991, 997 (9th Cir.1999). Section 7430 allows an award of litigation costs, including attorneys' fees, where the government's position is not "substantially justified." *See* 26 U.S.C. § 7430(c)(4)(B)(i). To show that its position is substantially justified, "the government must show a reasonable basis in truth for the facts alleged, a reasonable basis in law for the theory it propounds, and a reasonable connection between the facts alleged and the legal theory ad-

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

vanced." *Norgaard v. Commissioner,* 939 F.2d 874, 881 (9th Cir.1991).

Deja Vu contended that it was shielded from employment taxes under § 530 of the Revenue Act of 1978. Under § 530, a taxpayer can avoid liability if: 1) the taxpayer had a "reasonable basis" for treating its subject workers as non-employees; and 2) the taxpayer filed all requisite federal tax returns consistent with the treatment of the workers as non-employees. *See* Revenue Act of 1978, 92 Stat. 2763, 2885–86, § 530 (reproduced at 26 U.S.C. § 3401 note). Although § 530 should be construed liberally in favor of the taxpayer, Deja Vu bears the burden of proof in establishing that it was entitled to the protection of § 530. *See Marlar,* 151 F.3d at 965–66; *In re McAtee,* 115 B.R. 180, 182 (N.D.Iowa 1990). Once Deja Vu satisfies this burden, then the burden shifts to the government to show that its position that Deja Vu was not entitled to § 530 protection was substantially justified. *See* 26 U.S.C. § 7430(c)(4)(B).[2]

The government's position boiled down to two arguments: Deja Vu failed to satisfy § 530's requirement that all necessary returns be filed and Deja Vu did not reasonably rely on industry practice in classifying its performers as non-employees. We hold that the government was not substantially justified in making either argument.

## II.

To enjoy the safe harbor provision of § 530, the taxpayer must file all required federal returns, including informational returns. *See* § 530. The Internal Revenue Code requires all persons engaged in a trade or business to file a 1099 informa-tional return when they make payments of more than $600 to another person in any taxable year. IRC § 6041(a). There does not need to be an employer-employee relationship for § 6041 to apply; there only needs to be a payment. *See Marlar,* 151 F.3d at 968. In district court, the government took the position that Deja Vu was not protected by § 530 because it made unreported payments to its dancers in the form of free legal services and ladies' drink credits.

When dancers were charged with criminal violations in connection with their work at the clubs, Deja Vu provided legal representation at no charge. The IRS argued that Deja Vu should have issued 1099 forms to its dancers to report the free legal services it provided to them. The cases that the IRS cites in support of its argument provide no guidance as to whether free legal services are "payments" under § 6041. The definition of "payment" refers to the transfer of control over income from one person to another. *See Manchester Music Co. v. United States,* 733 F.Supp. 473, 482 (D.N.H.1990). The taxpayer in *Manchester Music* owned coin-operated pinball machines and entered into an agreement to share in the profits from those machines with the owners of establishments at which the machines were placed. The court concluded that agreements to share in profits from pinball machines did not result in payments that needed to be reported under § 6041(a) because the taxpayer never exercised full control over the coins in the machines. *See id.* Similarly, it seems obvious that the dancers never had full control over the legal services provided by Deja Vu. The legal services were provided to a dancer

---

**2.** The district court erroneously stated that this burden was on the taxpayer. Rather than remanding this case for the district court to apply the correct standard, we conclude that the evidence clearly demonstrates that the government's litigation position was not substantially justified.

only when a dancer's legal trouble impacted the clubs. The language of § 6041(a) refers to payments of "rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable gains, profits, and income," not legal services offered at the taxpayer's discretion. IRC § 6041(a). The government did not have a reasonable basis in law and fact to proceed against Deja Vu on this issue.

The government also contended that the credits Deja Vu dancers received against their "rent" when a customer purchased drinks for them were reportable payments under § 6041. Deja Vu argues that the government's position was not substantially justified because there was no legal precedent supporting the government's position. The IRS responds that a district court decision, *JJR, Inc. v. United States*, 950 F.Supp. 1037 (W.D.Wa.1997), held out the possibility that ladies' drink credits could constitute "payments" under § 6041. In *JJR*, the government did not provide sufficient evidence that the credits totaled over $600, but the court suggested that if the credits had totaled over $600, they might have constituted payments. *See id.* at 1045 ("The Court concedes that the initial $10 credit and subsequent $5 per drink shared with the performers may constitute 'payments' for purposes of § 6041 reports.").

The dicta from the *JJR* opinion is too slender a reed to justify the government's position. The *JJR* court only indicated that ladies' drink credits "may" constitute payments. It refused to resolve the issue. By crediting the dancers for drinks purchased on their behalf, Deja Vu is merely transferring the money from the customer to the dancer who uses it to reduce her rent obligation. The *Marlar* court explained:

The only question before us, therefore, is whether Marlar made a "payment" ... when it awarded ladies' drink rent credits. To answer this question, we need simply recognize the eminently logical proposition that a transferor of funds does not make a 'payment' when it acts as a mere conduit or disburser of the funds.

*Marlar*, 151 F.3d at 969. Although the *Marlar* decision came out after the government formed its litigation strategy, its reasoning should have been apparent to the government from the beginning. If Deja Vu did not have to report cash payments given to the dancers by club patrons, it makes little sense for Deja Vu to report the patrons' use of cash to purchase drinks for the dancers. *See id.* at 968–69. Apart from the dicta in *JJR*, the government offers no authority to justify its litigation position regarding § 530's filing requirements. The case law defining "payments" and the IRS's own revenue rulings offer no support for the argument that drink credits should count as payments. *See, e.g.*, Rev. Rul. 69–26 (ruling that transfers of money from golfers to caddies that went through golf club account are not "payments"). Therefore, we hold that the government's position on the ladies' drink credits was not substantially justified.

### III.

Even though Deja Vu filed its required tax returns, it is not necessarily entitled to the protections of § 530. Deja Vu must also demonstrate that it had a reasonable basis for treating its dancers as other than employees. Deja Vu may demonstrate this by showing that it classified its dancers as lessees based on a long-standing recognized practice of a significant segment of the adult nightclub industry. *See* § 530. Once Deja Vu establishes a reasonable basis for treating its dancers as

lessees, the burden shifts to the government to show that its litigation position had "a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

Deja Vu demonstrated that it reasonably relied on long-standing industry practice in classifying its dancers as lessees instead of employees. Other courts have noted that it is standard procedure in the adult entertainment industry for dancers to be characterized as non-employees. *See Deja Vu Entertainment Enterprises of Minn., Inc. v. United States*, 1 F.Supp.2d 964, 969 (D.Minn.1998) ("[T]he adult entertainment industry routinely characterizes performers as independent contractors rather than employees."); *Taylor Blvd. Theatre, Inc. v. United States*, 1998 WL 375291, *3 (W.D.Ky., May 13, 1998) ("Previous cases support the proposition that it is standard industry practice to treat dancers as non-employees."). Deja Vu submitted evidence that it relied on the practice of the clubs' prior owner in treating dancers as non-employees, and the IRS even admitted that treating dancers as lessees was long-standing industry practice. Deja Vu satisfied its burden of proof under § 530.

Once Deja Vu satisfies its burden of proof, the burden shifts to the government to show a reasonable basis in law *and* in fact for its position. The IRS contended that Deja Vu did not have a good faith belief that its dancers were not employees. Whether or not a worker should be classified as an employee is determined largely by the degree of control exercised by the alleged employer. *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324 (5th Cir. 1993); *Matcovich v. Anglim*, 134 F.2d 834 (9th Cir.1943). If Deja Vu exercised enough control over its dancers' work habits, then they should have been classified as employees instead of tenants.

We hold that the IRS did not have a reasonable basis *in fact* for its position. The IRS prosecuted several similar cases around the country and knew that it was standard industry practice to define adult performers as non-employees. The IRS contends that its position was still substantially justified because the particular facts of this case demonstrate that Deja Vu was acting in bad faith in considering its dancers to be lessees. In other words, despite the years of industry precedent, Deja Vu knew better. The government introduced evidence that Deja Vu exerted substantial control over the dancers' schedules, the content of their performances, and the prices that they could charge customers for individual dances. The district court found this evidence sufficient to justify the government's litigation position.

We disagree with the reasoning of the district court and hold that the government did not have a reasonable basis in fact for its position. The facts cited by the government do not show that Deja Vu was unreasonable in relying on industry practice in classifying its dancers as employees. There is no evidence that the Deja Vu clubs in Seattle exercised a greater degree of control over their dancers than clubs in other parts of the country. For example, in a recent case, the nightclub at issue dictated the order of performance for each dancer and set prices for personal dances yet the court concluded that the IRS's litigation position was not substantially justified. *See Cinema Art Theatre v. United States*, 46 F.Supp.2d 812, 813 (C.D.Ill.1999). Deja Vu claims that it relied on audits of its clubs outside of Washington in deciding that it was reasonable to treat its dancers as non-employees. *See Beck v. United States*, 1999 WL 250773, *2 (D.S.C., March 4, 1999) (holding that government was not substantially justified when nightclub owner provided names of clubs he contacted about how they desig-

nated their dancers and government did not adduce any evidence to show that owner did not contact the clubs or to show that industry·practice was different than the owner purported it to be). In short, the government offered no evidence that could allow a reasonable trier of fact to infer bad faith in Deja Vu's decision to rely on industry practice and treat its dancers as lessees. The reasonable basis portion of § 530 is supposed to be construed liberally in favor of the taxpayer. *See General Inv. Corp. v. United States,* 823 F.2d 337, 340 (9th Cir.1987). Only an inappropriately narrow construction of § 530 would allow the district court to infer bad faith on Deja Vu's part without a specific showing that Deja Vu should have known that its particular requirements for its dancers were more stringent that the requirements of other adult nightclubs.

## IV.

The government was not substantially justified in asserting that Deja Vu did not have a reasonable basis for classifying its dancers as non-employees; its evidence of Deja Vu's control over its dancers is not enough to show that Deja Vu did not have a good faith belief that its dancers were lessees rather than employees. The government was not substantially justified in contending that Deja Vu failed to make the necessary filings to enter the § 530 safe harbor. We reverse the decision of the district court and remand for a determination of the proper amount of litigation costs to be awarded.

### REVERSED AND REMANDED.

WALLACE, Circuit Judge, dissenting.

I dissent because I believe that the government was substantially justified in arguing that the ladies' drink credits constituted "payments" under section 6041, and

thus that Deja Vu had not satisfied section 530's filing requirements.

26 U.S.C. § 7430(a) provides that the prevailing party "[i]n any administrative or court proceeding which is brought by or against the United States in connection with... [tax liability] ...may be awarded ... reasonable litigation costs incurred in connection with such court proceeding," including attorneys fees. A party is not to be treated as the prevailing party "if the United States establishes that... [its position] ...in the proceeding was substantially justified." 26 U.S.C. § 7430(c)(4)(B)(i). The Supreme Court in *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal quotation marks omitted), stated that "substantially justified" means "justified in substance or in the main-that is, justified to a degree that could satisfy a reasonable person." We review the district court's opinion to deny a prevailing party an award of attorney fees under 26 U.S.C. § 7430 for an abuse of discretion. *United States v. Ayres,* 166 F.3d 991, 997 (9th Cir.1999).

As the majority correctly states, the district court erred in holding that Deja Vu bore the burden of demonstrating that the government's position that Deja Vu was not entitled to protection under section 530 of the Revenue Act of 1978 was not substantially justified. Rather, *the government* had the burden to show that its position that Deja Vu was not entitled to section 530 protection *was* substantially justified. *See* 26 U.S.C. § 7430(c)(4)(B).

We now know that the government will fail with its argument in the future because we held in *Marlar v. United States,* 151 F.3d 962, 969 (9th Cir.1998), that a club does not make a payment when awarding "ladies' drink credits." Rather than remand for the district court to apply the corrected burden of proof, the majority relies on *Marlar* to conclude that the gov-

ernment was not substantially justified in arguing that the dancers' drink credits were reportable payments under section 6041, stating "[r]ather than remanding for the district court to apply the correct standard, we conclude that the evidence clearly demonstrates that the government's litigation position was not substantially justified."

While the majority is entirely correct that this holding *prospectively* prevents the government from being substantially justified in arguing that the ladies' drink credits constitute "payments" under section 6041, the majority fails to appreciate the significance of the fact that the present case began *before* we decided *Marlar*. It is simply an untenable analytical approach to determine that precedent handed down after a case was filed "relates back" to deprive the filing party of substantial justification for its position at the time of filing.

Rather, a more logical approach would examine *JJR, Inc. v. United States*, 950 F.Supp. 1037 (W.D.Wash.1997), the only decided case at the time the IRS *filed* its suit against Deja Vu to address the issue of whether ladies' drink credits at an adult nightclub constitute payments to the dancers. While *JJR* did not ultimately determine the status of such credits under section 6041 due to the insufficiency of the government's evidence as to the sum of the credits, the court's opinion did directly address the issue, stating that the drink credits "may constitute 'payments' for the purposes of § 6041 reports." *Id.* at 1045. Such dicta from a district court, with no contrary holding from a higher court, is certainly sufficient to provide a degree of support sufficient to "satisfy a reasonable person" under *Pierce*, 487 U.S. at 565–66, 108 S.Ct. 2541.

Thus, I can not agree with the majority that the district court abused its discretion in determining that the government did not have a reasonable basis for arguing that Deja Vu failed to satisfy section 530's requirement that all necessary forms and reports be filed in relation to the ladies' drink credits. A district court opinion with no contrary higher court opinion is clearly sufficient to provide a reasonable basis for a litigation theory, and the determination by the district court that reliance on such an opinion provides such a basis is not an abuse of discretion. A post hoc analysis of the case using precedent not in existence at the time the case was filed is inappropriate. Rather than reversing, we should simply remand to the district court so that it may apply the appropriate burden of proof.